IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Gordon Simmons Holcomb, | ) | Civil Action No. 8:13-02066-JMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In January 2011, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of December 19, 2010. [R. 123–132.] The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 60–71, 75–80.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 4, 2012, ALJ Edward Morriss conducted a de novo hearing on Plaintiff's claims. [R. 42–59.]

The ALJ issued a decision on November 6, 2012, finding Plaintiff not disabled. [R. 21–41.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2015, and had not engaged in substantial gainful activity since December 19, 2010, the alleged onset date. [R. 26, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairment: status post open reduction and internal fixation of right distal radius fracture. [R. 26, Finding 3.] The ALJ also found that Plaintiff had been diagnosed with, treated for, or given a history of the following non-severe impairments: obesity, osteoarthritis of the knees, hypertension, chronic low back pain, and anxiety. [R. 27.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart A, Appendix 1. [R. 28, Finding 4.] The ALJ specifically considered Listings 1.02, 1.04, and 4.00H with respect to Plaintiff's physical impairments and also considered the effects of Plaintiff's obesity under SSR 02-01p. [R. 28–29.] The

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

ALJ also considered Listing 12.00 with respect to Plaintiff's mental impairments. [R. 27–28.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can frequently climb ramp and stairs, as well as frequently balance. He can occasionally stoop, knee, crouch, and crawl. He must never climb ladders, ropes, or scaffolds.

[R. 30, Finding 5 (footnote in original).] Based on this RFC, the ALJ determined at Step 4 that Plaintiff could not perform his past relevant work. [R. 34, Finding 6.] At Step 5, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 35, Finding 10.] Thus, the ALJ concluded Plaintiff was not under a disability as defined by the Act from December 19, 2010, through the date of the decision. [R. 35, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 19–20], but the Council declined [R. 6–11]. Plaintiff filed this action for judicial review on July 29, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence based on the following errors made by the ALJ:

---

[4]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday.

3

1.    the ALJ failed to properly evaluate and/or weigh the opinion of treating physician Rogers Walker, M.D. ("Dr. Walker") [Doc 9 at 7–11]; and

2.    the ALJ failed to properly evaluate Plaintiff's credibility [*id.* at 11–15].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ properly weighed Dr. Walker's opinions.  [*Id.* at 10–15.]  Additionally, the Commissioner argues the ALJ considered Plaintiff's subjective complaints of pain and reasonably found they were not fully credible.  [*Id.* at 15–20.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d

4

585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court

5

must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or

8

before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d

47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

11

other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

### APPLICATION AND ANALYSIS

### Treating Physician's Opinion

Plaintiff contends the ALJ erred by giving greater weight to the opinions of two non-examining state agency medical consultants over the opinions provided by long-time treating source Dr. Walker.  [Doc. 9 at 8.]  Plaintiff contends Dr. Walker's opinions were both supported by appropriate clinical and diagnostic medical findings and uncontradicted by other substantial evidence.  [*Id.* at 9.]  Additionally, Plaintiff contends the reports provided by the non-treating, non-examining consultants are not substantial evidence in this case in that Cleve Hutson, M.D. ("Dr. Hutson"), reviewed only pre-onset treatment records

from Dr. Walker and Joseph Gonzalez, M.D. ("Dr. Gonzalez"), reviewed only six months of post-onset treatment records from Dr. Walker.  [*Id.* at 9–10.]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's opinion will be entitled to the

18

greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

### *Plaintiff's Medical History with Dr. Walker*

Treatment notes indicate that Plaintiff saw Dr. Walker of Walker Urgent & Family Care, LLC, on or about December 9, 2009 for chronic right knee and lower back pain. [R. 219.] Dr. Walker noted Plaintiff had moderate back pain with difficulty on ambulation, limited range of motion, and tenderness to palpation. [*Id.*] Dr. Walker diagnosed Plaintiff with low back pain and anxiety. [*Id.*] Plaintiff saw Dr. Walker again on April 7, 2010 as a follow-up with moderate back pain, difficulty with ambulation, limited range of motion, and paraspinous tenderness to palpation. [R. 220.] Plaintiff indicated his medications were

19

working well and he was otherwise doing okay. [*Id.*] On follow-up on May 5, 2010; June 2, 2010; and June 30, 2010, Plaintiff again presented to Dr. Walker on follow-up for his back pain experiencing moderate back pain, difficulty with ambulation, low back pain, limited range of motion, and paraspinous tenderness to palpation. [R. 221–223.] Plaintiff indicated at each visit that his medications were working well and that he was otherwise doing okay. [*Id.*]

On July 28, 2010, presented to Dr. Walker on follow-up for his back pain with moderate back pain, difficulty with ambulation, limited range of motion, and paraspinous tenderness to palpation and complaining that his blood pressure was up due to stress. [R. 224.] Dr. Walker diagnosed Plaintiff with knee stiffness, low back pain, and hypertension. [*Id.*] On August 24, 2010, Plaintiff saw Dr. Walker for release papers so that he could have a tooth pulled by the dentist. [R. 225.] He again presented with moderate back pain, difficulty with ambulation, limited range of motion, and paraspinous tenderness to palpation. [*Id.*] On exam, his lungs were clear, heart and skin were normal, deep tendon reflexes were symmetrical, gait was normal, and no sensory or focal defects or involuntary movements were noted. [*Id.*]

On September 22, 2010, Plaintiff presented to Dr. Walker complaining of knee pain, bilateral swelling, and pain when walking. [R. 226.] Plaintiff indicated that he had no insurance. [*Id.*] Exam notes indicate moderate back pain, difficulty with ambulation, low back pain, limited range of motion, paraspinous tenderness to palpation, clear lungs, normal heart and skin, symmetrical deep tendon reflexes, normal gain, no sensory or focal defects or involuntary movements, trace ankle edema, and slight swelling of both knees. [*Id.*] On October 20, 2010, Plaintiff returned to Dr. Walker complaining of chronic low back

pain and asking for "another cortisone shot because it really helped last month." [R. 227.] Plaintiff returned to Dr. Walker on November 17, 2010 on follow-up for his hypertension and chronic low back pain. [R. 228.]

On December 10, 2010, Plaintiff presented to Dr. Walker requesting a cortisone shot for pain after falling off of the deck at work and twisting his right knee and lower back. [R. 229.] On January 14, 2011 and February 11, 2011, Plaintiff saw Dr. Walker on follow up for his chronic low back pain after his fall during which he injured his wrist and ribs. [R. 264.] On examination, Plaintiff had full range of motion in his neck without pain and normal respiratory, cardiovascular, and gastrointestinal findings. [R. 265.] On March 9, 2011, Plaintiff returned to Dr. Walker on follow-up for his chronic low back pain, seeking to have a disability form completed. [R. 316.] Plaintiff's physical exam was normal with the exception of lower back pain and right wrist pain. [R. 317.] Dr. Walker noted that Plaintiff was well-developed, well-nourished, in no cardiorespiratory distress, oriented to time, place and person, ambulated to the exam room without assistance, and was able to sit comfortably on the exam table without difficulty or evidence of pain. [*Id.*] Dr. Walker also noted that Plaintiff's cranial nerves were grossly intact, strength was 5/5 in all muscle groups, sensation was intact, reflexes were equal and symmetric bilaterally in the upper and lower extremities, finger-to-nose coordination was within normal limits, gait was normal without ataxia, and no mood swings or psychotic features were present. [*Id.*]

Also on March 9, 2011, Dr. Walker completed a form provided to him by Disability Determination Services, seeking additional information regarding Plaintiff's mental condition and any treatment records after Plaintiff's December 10, 2010 treatment date. [R. 268– 72.] Dr. Walker indicated that Plaintiff was diagnosed with anxiety and was being treated

21

with Xanax.  [R. 270.]  Dr. Walker also indicated that the medication was helping Plaintiff's condition, that psychiatric care had not been recommended, and that Plaintiff was oriented as to time, person, place and situation; his thought process was intact; his thought content was appropriate; his mood/affect was worried/anxious; his attention/concentration were adequate; and his memory was good.  [*Id.*]

On April 7, 2011, Plaintiff saw Dr. Walker on follow-up for his chronic low back pain and anxiety, but was otherwise doing okay.  [R. 319.]  On exam, Dr. Walker noted Plaintiff was well-developed, well-nourished, in no cardiorespiratory distress, and alert and oriented to time, place and person.  [R. 320.]  Dr. Walker noted that Plaintiff ambulated to the exam room without assistance and was able to sit comfortably on the exam table without difficulty or evidence of pain.  [*Id.*]  Dr. Walker noted Plaintiff had a painful range of motion in the right wrist, but that his cranial nerves were grossly intact, strength was 5/5 in all muscle groups, sensation was intact to light touch and pinprick, reflexes were equal and symmetric bilaterally in the upper and lower extremities, cerebellar function was grossly intact, finger-to-nose coordination was within normal limits, and gait was normal without ataxia.  [R. 320–321.]  Dr. Walker also noted no mood swings or psychotic features were present, insight was good, and memory and judgment were intact.  [R. 321.]

On May 6, 2011, Plaintiff saw Dr. Walker on follow-up for his hypertension, anxiety, and chronic low back pain.  [R. 322.]  Plaintiff also continued to complain of wrist pain and back pain exacerbated by the fall at work in December 2010, as well as neck pain.  [*Id.*] Plaintiff stated that pain medications helped but that he had been on "oxy" in the past from Dr. Boatwright and could not afford to go to him.  [*Id.*]  Plaintiff's physical exam findings were the same as the April 7, 2011 findings.  [R. 323–324.]  On June 6, 2011, Plaintiff

returned to Dr. Walker on follow-up for anxiety and chronic low back pain, indicating the medications were working well and he was otherwise feeling okay.  [R. 325.]  Again, Plaintiff's exam findings were the same as the April 7, 2011 findings with the exception of Plaintiff's wrists showing tenderness to palpation and his lumbar spine showing a painful range of motion.  [R. 326.]

On July 5, 2011, Plaintiff returned to Dr. Walker on follow-up for chronic low back pain and anxiety and to discuss his disability paper work with the doctor.  [R. 345.] Plaintiff's physical exam was the same as the June 6, 2011 exam.  [R. 346–347.]  Plaintiff visited Dr. Walker on July 22, 2011 to have his disability paperwork completed, indicating he was filing "for his arms, knees, and back pain" but was otherwise doing okay.  [R. 348.] Plaintiff's physical exam, again, mirrored the previous exam on July 5, 2011.  [R. 349–350.]

On July 25, 2011, Dr. Walker completed a *Multiple Impairment Questionnaire*, indicating Plaintiff's first date of treatment was January 12, 2009, his most recent exam was July 22, 2011, and that he saw Plaintiff monthly.  [R. 352.]  Dr. Walker noted Plaintiff's diagnosis included chronic knee pain and chronic lower back pain and that his prognosis was fair.  [*Id.*]  Dr. Walker based his diagnosis on Plaintiff's knee pain and swelling, lower back pain, an MRI by Dr. Boatwright, and x-rays.  [R. 352–353.]  Dr. Walker noted Plaintiff's symptoms and functional limitations were reasonably consistent with his physical impairments and that the nature of his pain was chronic.  [R. 353.]  Dr. Walker estimated Plaintiff's pain level at a 7 out of 10, his fatigue level at a 6 out of 10, and noted that he was unable to completely relieve Plaintiff's pain with mediation without unacceptable side effects.  [R. 354.]

With respect to Plaintiff's ability to work in a normal, competitive, five-day-a-week work environment, Dr. Walker opined Plaintiff could sit for 2 hours and stand/walk for 2 hours in an eight-hour day and that is was necessary or medically recommended that Plaintiff not sit continuously and be allowed get up and move around frequently. [*Id.*]  Dr. Walker also noted that it was necessary or medically recommended that Plaintiff not stand/walk continuously.  [R. 355.]  Dr. Walker further opined that Plaintiff could frequently lift/carry 0 to 5 pounds, occasionally lift/carry 5 to 20 pounds, and never lift/carry over 20 pounds.  [*Id.*]  Dr. Walker opined that Plaintiff had no limitations in using his upper extremities. [R. 355–356.]  Dr. Walker also noted Plaintiff "was previously going to pain management [and] ins[urance] ran out per [Plaintiff]."  [R. 356.]

Additionally, Dr. Walker opined Plaintiff's symptoms would likely increase if he were placed in a competitive work environment and that his condition interfered with his ability to keep his neck in a constant position, e.g., looking at a computer screen.  [R. 356.]  Dr. Walker provided no opinion in response to a question asking whether Plaintiff could do a full time competitive job that required activity on a sustained basis.  [R. 357.]  Dr. Walker did, however, opine that Plaintiff's pain, fatigue or other symptoms would frequently to constantly interfere with his attention and concentration, that Plaintiff's impairments would last at least twelve months, and that emotional factors would contribute to the severity of Plaintiff's symptoms and functional limitations.  [*Id.*]  Dr. Walker opined Plaintiff could tolerate low stress on a job but would need to take frequent unscheduled breaks for an undetermined amount of time.  [R. 357.]  Dr. Walker noted Plaintiff's impairments would likely produce good and bad days, but he did not indicate a frequency of these good and bad days.  [R. 358.]  Finally, Dr. Walker indicated the following limitations would affect

24

plaintiff's ability to work a regular job on a sustained basis: psychological limitations; the need to avoid fumes and gases; and the need to avoid pushing, pulling, kneeling, bending, and stooping.  [R. 358.]

On May 3, 2012, Dr. Walker wrote a letter on Plaintiff's behalf opining as follows:

> . . . Due to previous injury, the patient has right knee swelling and painful/limited range of motion.  His low back pain causes difficulty with ambulation and limited range of motion.  Patient had a knee xray, which showed DJD, and an MRI of the back per Dr. Boatwright.  Patient is currently being treated with medications as follows: percocet and celebrex.  He does get adequate relief with the medications, but the percocet may cause drowsiness.  In my opinion, his prognosis is fair, he is disabled, and cannot bend, stoop, kneel, lift, or do repetitive motions due to his conditions.  He has, indeed, been disabled for more than 12 months and his disability is indefinite.  If there are any further questions, please feel free to contact my office.

[R. 385.]

### The ALJ's Treatment of Dr. Walker's Opinions

With respect to Dr. Walker's opinions outlined in his July 2011 *Multiple Impairment Questionnaire*, the ALJ found as follows:

> Little weight is accorded to some portions of the impairment questionnaire completed by Dr. Walker and dated July 25, 2011, as it is inconsistent with his treating notes.  Dr. Walker noted that the claimant had chronic right knee pain, slight right knee swelling, and chronic low back pain.  Precipitating factors leading to the claimant's pain included previous injury and overuse.  While the claimant generally reported that his pain medications were working well, Dr. Walker rated the claimant's pain as a "7" out of a scale of 10, and his fatigue, while generally not reported during routine office visits as a "6" out of a scale of 10.  Notably, while Dr. Walker never referred the claimant to a pain management specialist, but prescribed him long-term narcotic therapy, he stated that he was unable to completely relieve the claimant's pain with medication without unacceptable side effects.  However, office notes generally do

not indicate that the claimant reported untoward medication side effects.  In an 8-hour day, Dr. Walker stated that the claimant could sit, stand, or walk for 2-hours each.  He noted that the claimant would need to move around frequently and that he could not sit, stand, or walk continuously (Exhibit 14F).

According to Dr. Walker, the claimant could lift/carry 5 pounds frequently and up to 20 pounds occasionally.  Dr. Walker stated that the claimant had significant limitations lifting but had no limitations with regard to being able to use his upper extremities during an 8-hour workday, noting the claimant's upper extremities were okay.  Notably, Dr. Walker acknowledged that the claimant reported "drowsiness and dependence" as medication side effects.  Although office notes report do not indicate cervical disc disease, the claimant began reporting having painful neck movements on May 6, 2011; however, Dr. Walker reports no upper extremity limitations, but indicates on the questionnaire that the claimant's condition interfered with his ability to keep his neck in a constant position.  Of particular note is that Dr. Walker indicated he did not know if the claimant could perform a full time competitive job that required that he keep his neck in a constant position on a sustained basis (Exhibit 14F).

Furthermore, although Dr. Walker's office notes consistently described the claimant's insight as good and his memory and judgment as intact, Dr. Walker indicates that the claimant's experience of pain, fatigue or other symptoms were severe enough to "frequently-constantly" interfere with his attention and concentration.  Although Dr. Walker did not refer the claimant to a mental health specialist, he reported that anxiety contributed to the claimant's symptoms and functional limitations; however, he notes that the claimant is capable of tolerating "low stress" work.  Dr. Walker was uncertain as to how many days a month the claimant would miss work, but stated that he would frequently need unscheduled breaks (Exhibit 14F).

According to Dr. Walker, the claimant had "psychological limitations" that would affect his ability to work at a regular job on a sustained basis.  He further reported that the claimant would need to avoid fumes and gases and that he could not perform bending, stooping, kneeling, pushing or pulling.  Dr. Walker notes that the aforementioned limitations were

expected to last 12 months and that the claimant had "good days" and "bad days" but that he always reported having some pain (Exhibit 14F).

Dr. Walker's office notes dated July 22, 2011, contradict the impairment questionnaire. According to Dr. Walker, the claimant's insight was good, as was his memory and judgment. No mood swings were reported. Dr. Walker indicated that medication helped the claimant's anxiety and noted that psychiatric care had not been recommended. He described the claimant's attention and concentration as adequate. According to Dr. Walker, the claimant was capable of managing his funds (Exhibit 6F, 13F).

Physically, the claimant exhibited full strength in all of his extremities and his sensation as well as his reflexes were intact. The claimant ambulated to the examination room with a normal unassisted gait and was observed to sit comfortably on the examination table without difficulty or evidence of pain. The claimant reported that neck movements were painful beginning May 6, 2011; however, no x-rays were performed (Exhibits 13F, 14F).

[R. 32–33.]

With respect to Dr. Walker's statement dated May 3, 2012, the ALJ explained the weight assignment as follows:

Similarly, little weight is accorded to the statement provided by Dr. Walker and dated May 3, 2012 which states that the claimant has chronic right knee, knee swelling, and chronic low back pain, which has resulted in painful limited range of motion of his right knee and low back, as well as difficulty with ambulation. Dr. Walker further reported that the claimant's knee x-ray showed degenerative joint disease. He stated that the claimant had a MRI of his back; however, Dr. Walker does not indicate the results. Although Dr. Walker, notes that the claimant obtained adequate relief from taking Percocet and Celebrex, in his opinion the claimant was "disabled," and had "indeed been disabled for more than 12 months and his disability was indefinite." According to Dr. Walker, the claimant's prognosis was "fair" and he was unable bend, stoop, kneel, lift, or do repetitive motions due to his conditions. While the claimant did not generally complain of medication side

effects during his office visits to Dr. Walker, and reported that he is able to drive, Dr. Walker reports that "the Percocet may cause drowsiness," a typical narcotic medication side effect (Exhibit 18F).

While such issues are reserved to the Commissioner, who has the responsibility to determine the ultimate issue of disability, Dr. Walker's opinion is not consistent with the medical evidence of record, including his progress and clinical notes. Dr. Walker's office notes generally describe the claimant's gait as normal. The claimant's strength was full and his sensation and reflexes were normal. Dr. Walker provided the claimant cortisone injections to his knee and prescribed him narcotics. On June 6, 2011, while the claimant complained of wrist and back pain, he indicated that his medications seemed to be working well and he was otherwise feeling okay. The claimant's physical examination was unremarkable and Dr. Walker reported that he was able to sit comfortably on the examination table without difficulty or evidence of pain, as well as ambulate with a normal unassisted gait (Exhibits 12F, 18F).

[R. 33–34.]

Based on an evaluation of the medical evidence, including Dr. Walker's opinions, the ALJ concluded that the Plaintiff had the RFC to do light work, with certain exertional limitations. [R. 30.] The ALJ also noted that the RFC was consistent with the opinion of the State Agency consultants[9], as well as consistent with the office records of his treating

---

[9]On April 7, 2011, Dr. Hutson completed a Physical RFC Assessment, finding Plaintiff capable of lifting/carrying 20 pounds occasionally; lifting/carrying 10 pounds frequently; standing/walking and sitting about 6 hours in an 8-hour workday; pushing/pulling unlimited; climbing ramps/stairs frequently; balancing frequently; and climbing ropes/ladders/scaffolds, stooping, kneeling, crouching, and crawling occasionally. [R. 299–306.]

On July 29, 2011, Dr. Gonzalez completed a Physical RFC Assessment, finding Plaintiff capable of lifting/carrying 20 pounds occasionally; lifting/carrying 10 pounds frequently; standing/walking and sitting about 6 hours in an 8-hour workday; pushing/pulling unlimited; climbing ramps/stairs frequently; balancing frequently; stooping, kneeling, crouching, and crawling occasionally; and climbing ropes/ladders/scaffolds never. [R. 374–381.]

physician, which indicate that the claimant has a normal unassisted gait and full strength in his extremities.  [R. 34.]

### Discussion

Plaintiff disagrees with the ALJ's determination and argues that Dr. Walker's opinions are "well-supported by appropriate clinical and diagnostic medical findings and uncontradicted by other substantial evidence."  [Doc. 9 at 10.]  Plaintiff, however, merely recites the evidence already considered by the ALJ and fails to point to any evidence ignored by the ALJ, or any other substantive evidence of record supporting Dr. Walker's findings or contradicting the ALJ's findings.

A review of the ALJ's decision shows that the ALJ evaluated Dr. Walker's opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and that he adequately indicated and explained the weight he assigned to Dr. Walker's opinion based on a lack of support in Dr. Walker's own treatment notes.  *See Craig*, 76 F.3d at 590 (holding that an ALJ may properly reject a treating physician's opinion where the physician's "own medical notes [do] not confirm his determination of 'disability.'")  Here, the ALJ accurately summarized Dr. Walker's treatment notes, which consistently stated that the Plaintiff reported his pain medication was working well, that he had no limitations with regard to being able to use his upper extremities during an 8-hour work day; that his insight was good; and that his memory and judgment were intact.  While Dr. Walker indicated Plaintiff had psychological limitations that would affect his ability to work a regular job, the ALJ noted that Dr. Walker's July 22, 2011 treatment notes indicate that medication helped Plaintiff's anxiety and that psychiatric care had not been recommended.  Dr. Walker also opined that Plaintiff was capable of tolerating low stress work.  Further, the ALJ noted that Dr. Walker's treatment

notes documenting Plaintiff's physical exams indicated Plaintiff had full strength in all of his extremities, intact reflexes, could ambulate with a normal unassisted gait, and was able to sit on the exam table without evidence of pain. Although Plaintiff began complaining of neck pain in May 2011, there is no x-ray documenting any cervical disc disease or any other cause for the pain. Additionally, the ALJ found the agency physician opinions with respect to Plaintiff's mental limitations were supported by the longitudinal record [R. 31] and that the RFC was consistent with the opinions of the state agency consultants and the office records of Dr. Walker [R. 34]. In light of the above, the Court cannot find that the weight assigned to Dr. Walker's opinion is a basis for remand.

**Credibility**

Plaintiff contends the ALJ applied the wrong legal standard when making his credibility determination in that the ALJ evaluated the consistency of Plaintiff's statements against the RFC rather than against the evidence of record. [Doc. 9 at 13.] Further, Plaintiff contends the ALJ's use of "boilerplate language" in his discussion of the record is insufficient to find Plaintiff not credible and that Plaintiff's ability to engage in activities of daily living are hardly compatible with the requirements of a full-time light exertional job. [*Id.* at 14.] The Commissioner contends the substance of the ALJ's decision itself supports the credibility determination and that the ALJ discussed the factors described by the regulations in assessing credibility and provided several reasons for finding Plaintiff not credible. [Doc. 10 at 17.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based

30

on a consideration of the entire case record.  SSR 96–7p, 61 Fed. Reg. at 34,485.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination.  Mastro, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### The ALJ's Credibility Determination

Based on his evaluation of the evidence, the ALJ found as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

31

are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

Medical records indicate that the claimant sustain[ed] a displaced right distal radius fracture on December 19, 2010. Two days later, he underwent an open reduction and internal fixation of his right distal radius fracture. Robert S. Leak, M.D., noted that 4 weeks after the claimant's surgery, he was "doing very well." The claimant reported persistent ulnar wrist pain 3 months after his surgery and received an injection to his ulnar carpus. Dr. Leak noted that the claimant's x-rays showed good alignment and healing of his distal radius fracture. Other than some ulnar deviation, the claimant was able to move his wrist well. Dr. Leak instructed the claimant to follow up with him in 6 weeks if he was not better (Exhibits 2F, 3F, 7F).

Rogers Walker, M.D., is the claimant's family practice physician who treated the claimant for his complaints of low back pain, knee pain, hypertension, and anxiety. The claimant has undergone cortisone injections for his complaints of knee pain (Exhibits 12F, 21F).

On March 9, 2011, the claimant presented to Dr. Walker's practice with complaints of his low back pain. Dr. Walker noted that the claimant had disability forms he wanted filled out. During his examination, Dr. Walker indicated that the claimant was able to ambulate to the examination room without assistance with a normal gait. The claimant sat comfortably on the examination table without difficulty or evidence of pain. His muscle strength was full in all of his muscle groups. The claimant's reflexes and sensation were also normal. Additionally, Dr. Walker observed that the claimant's memory and judgment were intact. No x-rays were ordered; however, Dr. Walker prescribed the claimant Norco for his complaints of low back pain and painful right wrist range of motion. The claimant reported that his medications were working well, and he was otherwise feeling okay on May 6, 2011 and June 6, 2011. His physical examination remained unremarkable (Exhibit 12F).

The claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The evidence of record indicates that despite the claimant's complaints and allegations, he has admitted that he

> was able to bathe and dress himself, cook, clean, wash
> laundry, drive, take care of his dog, and watch NASCAR
> activities, which generally reveal functioning at a greater level
> than alleged (Exhibit 4E, 4F).  These activities, when viewed in
> conjunction with the other inconsistencies, further limit the
> claimant's credibility.  Of note, his descriptions of his daily
> activities are representative of a fairly active lifestyle and are
> not indicative of a significant restriction of activities or
> constriction of interests.

[R. 30–31.]

### Discussion

As an initial matter, the Court finds that the ALJ's use of boilerplate language to set forth his conclusion regarding Plaintiff's credibility was not in error.  ALJ's routinely employ this language and the case law, including that cited by Plaintiff, holds that it is not error to do so unless the ALJ fails to provide an explanation in support of the finding.  *See McFadden v. Astrue*,  2012 U.S. Dist. LEXIS 113845, at *2–3 (D.S.C. Aug. 14, 2012).  Here, the ALJ provided concrete reasons for his credibility determination and did not, as Plaintiff argues, merely rely on boilerplate language.  Second, the undersigned finds no merit to Plaintiff's contention the ALJ assessed Plaintiff's credibility by comparing his testimony to the RFC rather than the evidence of record.  A mere cursory reading of the ALJ's decision belies this argument.

With regard to the reasons offered by the ALJ for discounting Plaintiff's credibility, Plaintiff suggests that the ALJ improperly relied on Plaintiff's activities of daily living in finding that he was not disabled.  The ALJ considered Plaintiff's activities of daily living but also considered inconsistencies between Plaintiff's testimony and the record as well as the lack of objective medical evidence to support the alleged severity of his impairments.  Further, pursuant to SSR 96–7p, it is appropriate for an ALJ to consider a claimant's

activities of daily living in assessing credibility.  Consequently, the Court cannot find that the ALJ placed undue weight on Plaintiff's activities of daily living.  For the foregoing reasons, the Court recommends a finding that the ALJ's credibility assessment is supported by substantial evidence and in compliance with the applicable regulations.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 2, 2015
Greenville, South Carolina